**Thomas E. DOLAN, Jr., Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 4, 1971.

Eugene H. Alvey, Henry P. Gaddie, Louisville, for appellant.

John B. Breckinridge, Atty. Gen., Mark F. Armstrong, Asst. Atty. Gen., Frankfort, for appellee.

VANCE, Commissioner.

The appellant was convicted of murder and sentenced to life imprisonment. On appeal he claims (1) the trial court erred in admitting evidence of a purported confession (2) the evidence was not sufficient to sustain the verdict (3) the court failed to instruct on the whole law of the case and (4) the court erred in overruling appellant's motion for a new trial on the ground of newly discovered evidence.

The appellant and his wife, Genevieve Dolan, resided in the home of appellant's father and mother in Jefferson County, Kentucky. On Easter Sunday, April 6, 1969, Genevieve Dolan was wounded by a pistol shot in the bedroom of the home. She died at a Louisville hospital at approximately 4:00 P.M. the same day. The pistol shot entered her head at the left temple and ranged upward through her brain. It was fired from close range and left powder burns surrounding the wound.

The week before the shooting, the appellant discovered his wife kissing another man; he struck her in the face, blacked her eyes and threatened to divorce her and take custody of their infant children. There was some evidence that the deceased was despondent and depressed and taking tranquilizers on prescription of a physician. There was also some evidence that the couple had become reconciled during the week preceding her death.

An Easter card was found in the room in which the deceased was shot. It was addressed to "Eddie" and the card contained the following message in the handwriting of the deceased.

"Honey

"On this Easter Sunday I know of the heartaches you have. With God's help you will be happy again! Without you my life musn't go on. With love in my heart I ask God to make you happy & some day bless you. You are my life. With love to you on Easter.

Love Genny"

The police officer on duty at police headquarters on April 6, 1969, testified that he received a telephone call from a man who identified himself as Thomas Dolan, Sr., and reported "That his son had shot his wife." Appellant's father testified that he reported to the police dispatcher that his son's wife had been shot.

The police were dispatched to the Dolan home and testified that upon arrival at the home the appellant made the following statement:

"I didn't mean to do it. I only meant to scare her."

Both parents denied that appellant made this statement. They testified he said, "Why did she do it" or words to that effect.

The injured Genevieve Dolan was removed to the hospital where she died shortly thereafter. At the hospital the appellant told a police officer "That his wife was lying on the bed face down and he was lying beside her. He stated he had the gun in his hand and he attempted to unload the gun but in pulling the slide back on the gun the safety slipped, the slide went forward and the gun discharged."

The appellant denied making any voluntary admission of the shooting. He testified that he was so upset and distraught that he could not remember what was said by him either at the home or at the hospital. He testified that he and his wife went driving Easter Sunday afternoon, arriving home about 2:30 P.M. They entered the house through the kitchen. At that time his father was seated upon the steps just outside the kitchen and his mother was preparing a meal. He stopped at the kitchen table while his wife went on to the bedroom. When the meal was ready he went to the bedroom to call his wife and discovered she had been shot. He commenced screaming and both parents immediately rushed to the bedroom.

Both parents corroborated this version of the incident. Although a noise similar to a shot was heard shortly before the discovery, nobody paid any attention to it because outside the house a group of motorcyclists were revving up the engines of their motorcycles, causing many noises similar to pistol shots.

The first contention raised by appellant is that the trial court improperly admitted evidence of his confession. He claims the confession was not voluntarily given and also that he had not been advised of his constitutional rights by the police officers.

■ The basis of the attack upon the voluntariness of the confession is two-fold, first, that the appellant was so upset, distraught and incoherent that he did not know what he was saying and second that sedatives were given to him at the hospital and any statement thereafter made was not freely given.

There is no intimation that the confession was coerced. The appellant was not

in custody and his statements were made in his home and in the hospital and not in a jail or police station. There is no evidence of any prolonged questioning or any conduct on the part of the officers to overcome his will. His statement at the hospital was given in response to a general inquiry as to what had happened.

It is now claimed that the statement was not freely given because he was not coherent at the time but there is no evidence that he was wildly irrational or unaware of what he was saying or doing. Admittedly he was upset but the testimony of the police officers indicates that they could understand the appellant and that he could understand them.

■ Evidence that a defendant was upset, hysterical, excited or distressed at the time of making a statement or confession does not render the statement involuntary or inadmissible but goes instead to the weight which a jury will give it. State v. Foster, 44 Haw. 403, 354 P.2d 960 (1960); 2 Wharton's Criminal Evidence, 12th Edition, Section 386, pages 118, 121; 23 C.J.S. Criminal Law § 828, Mental or Physical Incapacity, pages 226, 230.

The claim that appellant was sedated when he gave his statement rests upon inferences rather than direct proof. There is no direct evidence that a sedative was administered to the appellant. If a sedative was administered, there is no suggestion in the evidence as to what it contained or what effect it had upon the appellant. There is simply no showing to sustain the claim that the appellant was under the influence of drugs at the time his statement was made.

■ The appellant contends that he was not warned of his constitutional rights. The court conducted an inquiry out of the hearing of the jury in which it was shown that the officer at the hospital carefully explained appellant's constitutional rights as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). All statements made by the appellant before such warnings were given were excluded from evidence by the trial court. We think the action of the trial court in this respect was proper and we conclude that there was no abuse of discretion or error on the part of the trial judge in admitting the statements made by the appellant to police officers.

The claim that the verdict is not supported by the evidence is predicated upon RCr 9.60 which reads:

"A confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied with other proof that such an offense was committed."

The language of RCr 9.60 is identical to former Criminal Code, Section 240. Those sections have been interpreted uniformly to require an instruction in the language of the rule in any case in which an out-of-court confession was admitted in evidence unless the confession was accompanied by other proof, independent of the confession, that a crime had been committed. Hawk v. Commonwealth, 284 Ky. 217, 144 S.W.2d 496 (1940).

■ A distinction has been drawn between confessions and admissions against interest. When the out-of-court statement amounts to no more than an admission against interest no such instructions need be given. Herron v. Commonwealth, 247 Ky. 220, 56 S.W.2d 974 (1932) and Eldridge v. Commonwealth, 229 Ky. 499, 17 S.W.2d 403 (1929).

■■ An admission against interest is a statement of an accused which does not directly involve an acknowledgement of guilt or criminal intent. A confession is a voluntary statement made by a person charged with the commission of a crime, communicated to another person, wherein the facts acknowledged by him indicate criminal culpability on his part and discloses the circumstances of the act or the share and participation which he had in

it. Hedger v. Commonwealth, 294 Ky. 731, 172 S.W.2d 560 (1943) and Abdon v. Commonwealth, 237 Ky. 21, 34 S.W.2d 742 (1931).

■ The statements attributed to the appellant were not confessions. He did not confess guilt of any charge. At most the statements may be taken as an admission that a pistol in his possession fired the fatal shot.

■ RCr 9.60 must also be considered in connection with the requirement of proof of the corpus delicti. Corpus delicti means the body of the crime and in homicide cases proof of the corpus delicti requires a showing of (1) a death and (2) that the death resulted from the criminal agency of another. Warnell v. Commonwealth, Ky., 246 S.W.2d 144 (1952) and Hawk v. Commonwealth, 284 Ky. 217, 144 S.W.2d 496 (1940).

■ The corpus delicti may be shown by circumstantial evidence but the circumstances must be more consistent with guilt than with innocence. Goodman v. Commonwealth, Ky., 285 S.W.2d 146 (1955). Once the corpus delicti has been established a defendant's guilt can be established entirely by his own confession. Caldwell v. Commonwealth, Ky., 351 S.W.2d 867 (1961). Phrased in another way it may be said that the first requirement of the Commonwealth in a criminal prosecution is to establish that a crime has been committed. This cannot be established solely by an out-of-court confession. Once it has been sufficiently shown that a crime was committed the question of who committed it may be established solely upon the basis of an out-of-court confession.

In this case the appellant contends that the Commonwealth failed to establish that the death resulted from a criminal agency. He contends there is no evidence to establish that the death was the result of any act except suicide outside of the out-of-court confession of the appellant. Once again it is necessary to distinguish between a confession and a statement against interest and to point out that the statements attributed to appellant did not amount to a confession.

■ The evidence of appellant's discovery of the involvement of the deceased with another man, his previous physical violence toward her precipitated by that discovery and the discovery of an Easter card which might have indicated to him that the affair was not over are all circumstances which established a strong motive for the crime. That appellant had an opportunity to commit the crime was apparent.

The strong motive for the crime, and the opportunity to commit it combined with the testimony that appellant's father reported to the police that his son had shot his wife are circumstances which point strongly to a criminal agency as the cause of death and sufficiently establish the corpus delicti. Cf. Goodman v. Commonwealth, Ky., 285 S.W.2d 146 (1955); Powell v. Commonwealth, 308 Ky. 467, 214 S.W.2d 1002 (1948) and Wigginton v. Commonwealth, 92 Ky. 282, 17 S.W. 634 (1891) in which motive and opportunity were considered relevant factors in the establishment of the corpus delicti.

The cases relied upon by appellant are distinguishable upon the ground that in those cases the evidence was as consistent with the theory that no criminal agency caused the death as otherwise. In this case we think the evidence was sufficient to support the verdict.

■ The appellant contends that he should be granted a new trial upon the basis of newly discovered evidence. The alleged newly discovered evidence may be summarized as follows: Jack Willis McGill gave an affidavit and testified at the hearing on the motion for a new trial that he was in the Dolan household when the alleged shooting occurred. He stated that he went to the Dolan household to inquire about a used car which was advertised for sale on a poster at a nearby grocery. (Mr. Dolan,

Sr. stated that he had in fact posted such a notice). McGill knocked on the front door of the Dolan house, but no one answered. A young woman got out of a car parked in the driveway, came to the front door and asked if she could help him. When he informed her of his mission she told him to follow her inside. The young lady had a pistol in her hand partially concealed in some kind of wrapping material. He followed her into the house and she turned to her left telling someone not visible to him "there is a man here to see about the car." When no one came to him, he walked across the living room and looked toward the kitchen area. He could see a man, whom he identified as appellant, sitting at the end of a table talking to somebody. McGill remained unnoticed and sought to attract attention to himself by saying "excuse me." The appellant then got up from the table and came toward him. He asked about the car and appellant said "you will have to see my father" and pointed to where the father sat. Appellant then proceeded down the hallway, opened the bedroom door and discovered that his wife was shot. Appellant screamed and the other members of the family rushed to the bedroom. McGill stated that while he was in the house a noise was heard by him which could have been a gunshot but which he attributed to the backfire of some motorcycles which were in the vicinity.

McGill testified that when he found out that a woman had been shot in the bedroom and realized that he was a stranger in the house where the shooting took place, he was frightened and overcome by a powerful desire to be somewhere else. In the excitement, he left the house but remained close enough at hand to observe the arrival of the ambulance. He learned that Mrs. Dolan died and that her husband was charged with murder. He stated that he was tormented by the fact that he possessed knowledge important to the appellant but he was reluctant to involve himself in the case. He did attend the trial and intended there to make his knowledge

known but when he asked someone at the court house for permission to speak with anyone connected with the Dolan case he was brushed aside. He never did tell anybody what he knew until after the trial and conviction. He then went to his employer, a Colonel Epley of the local security police, and made a disclosure of the facts. He stated that he was not acquainted with appellant or any of appellant's family and that he had not talked with any of appellant's counsel prior to his disclosure.

It is contended that this evidence does not meet the test of newly discovered evidence because appellant knew all during the trial that somebody else had been in the house on the day in question. This, of course, is true but the appellant did not know the identity of the person who had been there nor how to locate him nor did he have any way to produce McGill as a witness at the trial. Appellant and his parents testified on the hearing for a new trial that they spent many hours before trial visiting stores, taverns and public places around the neighborhood seeking to locate McGill but were unable to find him. They said they did not tell anybody the story about his presence in the house because they feared they would not be believed and the story would further discredit appellant.

We believe the evidence relied upon was discovered after the trial and it is not shown that appellant failed to exercise due diligence prior to the trial.

█ The Commonwealth contends that for newly discovered evidence to warrant a new trial it must be of such decisive force that it would, with reasonable certainty, have changed the verdict or would probably change the results if a new trial were granted. Citing Taylor v. Commonwealth, Ky., 444 S.W.2d 725 (1969) and Porter v. Commonwealth, Ky., 435 S.W.2d 756 (1968). We recognize the danger of fraudulent practices which is inherent in motions for new trials based upon newly discovered evidence and new trials should not be

granted except in those cases in which the import of the newly discovered evidence is so great as to establish the probability of a different result.

Although the evidence in this case was sufficient to uphold the verdict, it was not overwhelming. The theory of the defense was unsupported by any witness outside of the appellant and his immediate family, all of whom had a personal interest in the outcome of the trial. It was not shown that McGill had any relation to or was even acquainted with appellant or his counsel. We think the evidence of a disinterested witness, if the jury believed him to be so, would have made a vital difference in the result of this case.

We therefore direct that appellant be granted a new trial.

Since the instructions to the jury may be an issue in a new trial, we deem it appropriate to discuss appellant's contentions that the trial court erred by failure to instruct upon voluntary manslaughter, involuntary manslaughter, accidental death and suicide. Instructions on accidental death and suicide were unnecessary because the instructions given required for conviction that the jury believe beyond a reasonable doubt that appellant willfully, feloniously and with malice aforethought shot the deceased. Such a finding negates both suicide and accidental death.

The appellant did not make a specific objection either at the trial or in his motion and grounds for a new trial that instructions covering voluntary and involuntary manslaughter were not given and thus did not preserve that question for review. RCr 9.54, Greenville, Jr. v. Commonwealth, Ky., 467 S.W.2d 765 (Decided May 21, 1971) and Patrick v. Commonwealth, Ky., 436 S.W.2d 506 (1969). On another trial, however, if the same evidence is introduced relating to the involvement of the deceased with another man as a possible motive for the shooting and if appellant's admission that the pistol accidentally dis-

charged while he was unloading it is introduced in evidence, the court should instruct on both voluntary and involuntary manslaughter. Pennington v. Commonwealth, Ky., 344 S.W.2d 407 (1961) and Marcum v. Commonwealth, 305 Ky. 92, 202 S.W.2d 1012 (1947).

The judgment is reversed.

All concur.