Jerry Lee LEWIS, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 1998–SC–0087–MR.

Supreme Court of Kentucky.

April 26, 2001.

Jerry L. Lewis, pro se, Kentucky State Penitentiary, Eddyville, Counsel for Appellant.

A.B. Chandler, III, Attorney General, William L. Daniel, II, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

COOPER, Justice.

Appellant Jerry Lee Lewis was indicted by a Fayette County grand jury for assault in the first degree and resisting arrest following his shooting of Lexington Metro Police Officer Tim Russell on June

30, 1996. Appellant was subsequently convicted of both charges and sentenced to twenty years in prison. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

On the night of June 30, 1996, Officer Russell responded to a "911 call" from the Wooden Shoe Farm in Fayette County, Kentucky, advising that Appellant had made terroristic telephone calls and was en route to the farm. Upon arrival, Officer Russell met with Frank Luckacs and Martha Billips Turner who attempted to describe the course of events leading up to the call. Appellant and his wife, Cynthia Lewis, had separated a few days before and Mrs. Lewis had been staying at the farm with their child. Earlier that day, Appellant had stopped by and threatened his wife and she had gone to Lexington to obtain an emergency protective order. KRS 403.740.

As the conversation progressed, a pickup truck pulled in the driveway and stopped directly behind Officer Russell's cruiser. The couple identified the driver to Officer Russell as Appellant. Russell drew his sidearm and ordered Appellant to raise his hands. Seeing that Appellant was unarmed, Russell holstered his weapon, called for backup assistance, and ordered Appellant to place his hands on the pickup truck. Instead, Appellant reached into the cab of his vehicle, pulled out a .357 magnum handgun, and threatened to shoot Russell if he did not cancel the request for backup assistance. When Appellant became momentarily distracted, Russell attempted to duck behind the passenger side of the truck, but was shot in the right side of his neck. Russell was able to continue off the driveway towards oncoming police cars. Backup officers subdued Appellant and placed him under arrest.

Officer Russell sustained severe injuries as a result of the shooting. The bullet entered his body at the base of his right neck and traversed to the left side, fracturing his left clavicle. As it crossed his body, the bullet cut Russell's carotid artery causing a life-threatening hematoma that required immediate surgery. Officer Russell also sustained an injury to his right vocal chord that left him chronically hoarse and unable to raise his voice. Finally, Russell sustained nerve damage to the left side of his face, so that his left eye now droops and he is unable to perspire on that side.

Appellant was represented by four successive attorneys at the trial level and a fifth on appeal. He dismissed his first three trial attorneys and proceeded to trial as pro se co-counsel. He raises ten claims of error, including (in a pro se reply brief) ineffective assistance of appellate counsel. None of his claims of error warrant reversal.

## I. CHANGE OF VENUE.

Appellant filed two pro se motions for change of venue. Neither was accompanied by supporting affidavits. A letter attached to his second motion stated that Appellant was depending on his co-counsel (attorney) to provide the required affidavits. Nevertheless, no affidavits were filed and both motions were overruled.

KRS 452.220(2) provides that a defendant's application for a change of venue be:

in writing, verified by the defendant, and by the filing of the affidavits of at least two (2) other credible persons, not kin to or of counsel for the defendant, stating that they are acquainted with the state of public opinion in the county objected to, and that they verily believe the statements of the petition for the change of venue are true.

The requirements of KRS 452.220(2) are mandatory and failure to comply is fatal to a claim of error. *Caine v. Commonwealth,* Ky., 491 S.W.2d 824, 828–29 (1973), *cert. denied,* 414 U.S. 876, 94 S.Ct. 80, 38 L.Ed.2d 121 (1973); *Murray v. Commonwealth,* Ky., 473 S.W.2d 150, 152 (1971); *White v. Commonwealth,* Ky., 394 S.W.2d 770, 772 (1965); *Taylor v. Commonwealth,* 240 Ky. 450, 42 S.W.2d 689, 692 (1931).

## II. PHARMACOLOGY/TOXICOLOGY EXPERT.

■ Appellant had long suffered from a panic disorder that impeded the normalcy of his life. To treat the disorder, Appellant was prescribed certain antidepressants designed to improve a person's mood by slowing the breakdown of serotonin in the brain. In June 1996, Appellant was taking two selective serotonin reuptake inhibitors: Paxil and Redux. Appellant's primary defense was that the combination of these drugs caused him to suffer from serotonin syndrome so that he was either acting under extreme emotional disturbance or was involuntarily intoxicated when he shot Russell. To prove this theory, Appellant, pro se, moved the trial court for funds to obtain a psychiatrist, a pharmacologist, and a toxicologist. The trial judge ordered payment of $2,500 to retain the services of Dr. Mark Hyatt, psychiatrist, to assist Appellant in proving his defense. Appellant complains on appeal that it was prejudicial error for the trial judge to fail to provide him with the additional assistance of a pharmacologist and a toxicologist.

Dr. Hyatt was the chief of mental services at the Veterans Administration Hospital in Lexington. One of his specialties is psychopharmacology—the study of drug interaction on the brain. He testified that serotonin is essential to bodily communication and acts as a neurotransmitter by bridging the synaptic cleft between two nerve endings. Further, the drug Paxil augments the amount of serotonin located in the synaptic cleft and the drug Redux stimulates the excretion of serotonin from nerve endings. Dr. Hyatt testified that the two drugs should not be taken in concert. He then described the symptoms of serotonin syndrome, *i.e.,* hyper-stimulation, restlessness, agitation, tremors, and myoclonus. However, he opined that these symptoms would not affect a person's ability to judge right from wrong. Finally, Dr. Hyatt testified that it was reasonably probable that Appellant was suffering from serotonin syndrome on the night of June 30, 1996.

We conclude that Appellant was not prejudiced by the failure to appoint additional experts. The trial judge provided funds for an expert on serotonin syndrome, which was Appellant's claim of defense. The procured expert specialized in psychopharmacology and testified to all aspects of the chemical serotonin: how it operates, how it affects the brain, and that Appellant was probably suffering from serotonin syndrome when he shot Officer Russell. Appellant does not advise what additional information could have been supplied by two more experts.

## III. TESTIMONY OF VICTIM'S WIFE.

■ Appellant asserts that the testimony of Officer Russell's wife should have been excluded on the basis of KRE 403, which permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Appellant asserts that Mrs. Russell's testimony failed each part of KRE 403. The Commonwealth

responds that the testimony was necessary to prove the severity of Russell's injuries.

Mrs. Russell described her husband's physical condition as it existed both prior to and following his vocal chord surgery. She testified about the loss of his voice, its improvement through surgery, and the condition of his shoulder. In all, Mrs. Russell testified for just over five minutes on the physical infirmities her husband exhibited after the shooting. Her testimony was relevant to prove that Officer Russell sustained a serious physical injury, an essential element of the offense of assault in the first degree. KRS 508.010(1)(a); *Souder v. Commonwealth*, Ky., 719 S.W.2d 730, 732 (1986). The trial judge did not abuse his discretion in determining that the probative value of this evidence was not substantially outweighed by the danger of undue prejudice, or that it was not unnecessarily cumulative. *Commonwealth v. English*, Ky., 993 S.W.2d 941, 945 (1999).

## IV. SUPPRESSION OF CONFESSIONS.

Appellant, who stood over six feet tall and weighed over 250 pounds, violently resisted the efforts of three police officers to place him under arrest. The officers were required to strike Appellant's legs with a baton, wrestle him to the ground, and spray him with pepper spray in order to subdue him. Throughout the melee, Appellant continued to fight and curse the officers. After being handcuffed and read his *Miranda* rights, *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Appellant was escorted to a squad car for transport from the scene. While being led to the squad car, Appellant admitted in response to a direct question that he had, indeed, shot Officer Russell. As he walked past Russell, who was still lying on the ground, Appellant spat on the ground and remarked, "I hope you die, motherf------." Appellant filed a pretrial motion to suppress these statements; but, when the motion was called for a hearing, Appellant advised he did not desire an evidentiary hearing because he did not want to reveal his defense strategy to the prosecutor. No evidence was introduced and the motion to suppress was summarily overruled. Appellant now claims his statements should have been suppressed because of his mental illness, his intoxication, and police coercion.

■ If a defendant moves to suppress a confession or other incriminating statements made by him, RCr 9.78 requires that the trial judge "shall conduct an evidentiary hearing ... and at the conclusion thereof shall enter into the record findings resolving the essential issues of fact ...." We have held that the evidentiary hearing is mandatory even if the defendant does not request it. *Mills v. Commonwealth*, Ky., 996 S.W.2d 473, 480–81 (1999), *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000). The burden is on the Commonwealth to affirmatively establish by a preponderance of the evidence the voluntariness of the defendant's confession or incriminating statement. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 627, 30 L.Ed.2d 618 (1972); *Tabor v. Commonwealth*, Ky., 613 S.W.2d 133, 135 (1981). Here, Appellant did not withdraw his motion to suppress, but simply declined to produce evidence to prove that his statements were involuntary. The Commonwealth introduced no evidence to satisfy its burden of proof that the statements were voluntary, and the trial judge overruled the motion without hearing any evidence at all. In *Johnson v. Commonwealth*, Ky.App., 563 S.W.2d 486 (1978), similar facts were held to require remand for an evidentiary hearing on the suppression motion.

Rule 9.78 is premised upon the holding in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) that a defendant who moves to suppress his confession or statement on grounds that it was involuntarily made is entitled to a pretrial evidentiary hearing and a subsequent finding on the issue by either a judge or a jury different from the one determining the issue of guilt or innocence. (RCr 9.78 mandates a hearing and finding by the judge.) However, it does not follow that the failure to hold a suppression hearing automatically results in a new trial, *id.* at 393–94, 84 S.Ct. at 1790, or even in a remand for an evidentiary hearing to determine voluntariness. To be entitled to a new hearing, a defendant must not only identify shortcomings in the procedures applied to the issue of voluntariness, but "he must also show that his version of events, if true, would require the conclusion that his confession was involuntary." *Procunier v. Atchley,* 400 U.S. 446, 451, 91 S.Ct. 485, 488, 27 L.Ed.2d 524 (1971). While *Procunier* was decided in the context of a petition for a writ of habeas corpus, federal courts have applied the same principle to direct appeals of criminal convictions. *E.g., United States v. Espinoza–Seanez,* 862 F.2d 526 (5th Cir.1988); *United States v. Davidson,* 768 F.2d 1266 (11th Cir.1985). The facts in *Davidson* were similar to those here. After being arrested and advised of his rights at the scene of the crime, Davidson made a verbal statement admitting his guilt. He moved to suppress the statement in a pretrial motion, again when the statement was offered against him at trial, and again at the close of the government's case. All three motions were summarily overruled without a hearing. On appeal, the Court of Appeals for the Eleventh Circuit held:

> The proper remedy for erroneously failing to hold a *Jackson v. Denno* hearing is to remand to the trial court for a

post-trial hearing on the issue of voluntariness: if the confession is found voluntary, the conviction stands; if the confession is found to be involuntary[,] the accused is entitled to a new trial without the confession's being admitted in evidence. *Jackson,* 378 U.S. at 394, 84 S.Ct. at 1790; *Martinez [v. Estelle],* 612 F.2d [173] at 177 [ (5th Cir.1980) ]. However, an appellant is not entitled to this remedy unless he can show "that his version of events, if true, would require the conclusion that his confession was involuntary;" *i.e.,* he must allege *facts* which would, if proven true, indicate the involuntariness of his confession.

*Davidson,* 768 F.2d at 1270 (quoting *Procunier, supra* at 451, 91 S.Ct. at 488) (emphasis in original). The Court then examined the facts alleged by Davidson and determined that, even if true, they would not require a conclusion that his statement was involuntary. While this is an issue of first impression in this Commonwealth, we find the federal cases persuasive.

Dr. Junker of the Kentucky Correctional Psychiatric Center testified in rebuttal at trial that she had examined Appellant and found him sane and competent to stand trial. The only mental illness claimed by Appellant is panic disorder; and there is no evidence that panic disorder would affect the voluntariness of a confession. *Dolan v. Commonwealth,* Ky., 468 S.W.2d 277, 280–81 (1971). As for intoxication, Appellant argues that the combination of Paxil and Redux caused him to be intoxicated, thus, his confession was unreliable. However, Appellant's expert testified that the symptoms of serotonin syndrome are hyper-stimulation, nervousness, agitation, tremors, and myoclonus. There was no evidence that the manifestation of these symptoms would affect the voluntariness of a confession.

*Id.* Regardless, the mere existence of a mental condition, by itself and apart from its relation to police coercion, does not make a statement constitutionally involuntary. *Colorado v. Connelly*, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986); *cf. Procunier v. Atchley, supra*, at 453–54, 91 S.Ct. at 489 (low intelligence is relevant "only in establishing a setting in which actual coercion might have been exerted to overcome the will of the suspect").

As to the claim of police coercion, the evidence indicates that the officers who subdued and arrested Appellant used no more force than was necessary under the circumstances. *Williams v. Commonwealth*, Ky.App., 734 S.W.2d 810, 812 (1987). Regardless, Appellant's self-incriminating statements were not made at the time he was being subjected to the physical force employed to effect his arrest. Rather, the statements were made after he had been arrested and advised of his rights, and while being walked to a squad car for transport from the scene. Appellant does not claim that any violence or threat of violence occurred at that time. *Price v. Commonwealth*, Ky., 31 S.W.3d 885, 890 (2000). Nor could it be argued that Appellant's will was overborne by the type of repeated and prolonged questioning proscribed by KRS 422.110; his confession was in response to one direct question. Finally, the statements were not rendered involuntary by the mere fact that Appellant was handcuffed at the time they were made. *Goff v. Commonwealth*, Ky., 245 S.W.2d 446 (1952); *cf. Price v. Commonwealth, supra*, at 890.

We thus conclude that the facts alleged by Appellant, even if true, would not require a conclusion that his statements were involuntary. It follows that he is not entitled to a remand for an evidentiary hearing on that issue. *Procunier v. Atchley, supra*.

## V. THE BALLISTICS EXPERT.

Appellant sought to prove that Officer Russell may have been wounded by a shot fired from a weapon other than Appellant's. Specifically, he notes that Robert Billips, who was inside the Wooden Shoe Farm residence, testified that when he heard shots being fired, he armed himself with a .38 caliber pistol. Billips denied firing his weapon. When Appellant moved the trial court for funds for his serotonin expert, he also requested funds for a ballistics expert to examine a "hole" in his pickup truck, which he posits might have been caused by another bullet. On November 6, 1997, the trial judge approved the expenditure of $500 to retain a ballistics expert. However, no ballistics expert was retained, and Appellant claims it was error to force him to trial without the testimony of a ballistics expert.

At a November 14, 1997 pretrial hearing, Appellant's fourth attorney advised the trial judge that the alleged "hole" in Appellant's pickup truck was, in fact, a dent. As such, counsel advised there was no need to have the truck examined by a ballistics expert. Appellant, however, continued to insist on hiring the expert. The matter remained at an impasse until the issue was revisited on the morning of trial. In a final motion for continuance, counsel advised that Appellant wanted the trial continued until a ballistics expert could examine the dent on his pickup truck. Counsel again reiterated his belief that a ballistics examination of the dent would accomplish little. The trial judge denied the motion.

Whether to grant or deny a continuance is within the sound discretion of the trial judge. RCr 9.04; *Williams v. Commonwealth*, Ky., 644 S.W.2d 335 (1982). Funds

to retain a ballistics expert had been approved. Appellant did not claim that due diligence had been unsuccessfully employed in an attempt to obtain the services of an expert. Nor did he assert what material evidence could have resulted from a ballistics examination of a dent on his pickup truck. The trial judge's denial of the motion for continuance was not an abuse of discretion.

## VI. LENGTH OF TRIAL.

██ The trial judge initially allotted one day for jury selection and two days for trial. Appellant objected, claiming that it would require four or five days to try his case. He now claims he was prejudiced by the allotment of only two days to present evidence. The morning of December 9, 1997 was devoted to jury selection. The actual trial commenced at 8:34 a.m. on December 10 and continued until 5:48 p.m. that afternoon, allowing an hour for lunch. The trial resumed at 8:47 a.m. on December 11 and the Commonwealth concluded its case-in-chief at 11:08 a.m. The defense began two minutes later and concluded at 3:19 p.m. The Commonwealth completed its rebuttal prior to 5:00 p.m. Jury deliberations began at 7:08 p.m. and the trial was concluded when the jury returned its sentencing recommendation at 8:31 p.m.

██ Appellant cites no instance where these alleged "Draconian time constraints" affected his ability to present his defense. He does not claim that the trial judge cut short his examination or cross-examination of any witness or otherwise precluded him from presenting evidence. It is axiomatic that a trial judge has wide latitude in controlling the length of a trial, and, absent some showing of prejudice, no abuse of discretion will be found. *Anderson v. Commonwealth*, Ky., 353 S.W.2d 381, 386 (1961), *cert. denied*, 369 U.S. 829, 82 S.Ct. 847, 7 L.Ed.2d 795 (1962); *Cassell v. Com-*

*monwealth*, 248 Ky. 579, 59 S.W.2d 544, 549 (1933). Appellant cites no instance of prejudice and we have no reason to believe the trial judge would not have allowed the trial to continue for additional days had it been necessary to do so; thus, we find no abuse of discretion.

## VII. DISCOVERY.

██ During the final pretrial hearing on November 21, 1997, Appellant, pro se, moved the trial judge to compel discovery on certain items that he perceived had not been forthcoming from the prosecutor. (The Commonwealth asserts that it had provided all discoverable items in its possession first to one of Appellant's previously dismissed attorneys, then again to his trial attorney.) Appellant claimed he had not seen the grand jury tapes, photographs, or statements from the three arresting officers and a friend of Appellant's ex-wife (a Woodford County assistant Commonwealth's attorney). In a lengthy discourse during that hearing, defense counsel stated that he believed he had received all statements that the prosecution possessed. The prosecutor also informed the trial judge that the two attorneys had personally examined the entire police file to ensure full disclosure. The trial judge reassured Appellant that all written statements had been turned over to the defense, and, if not, any dereliction would come to light during trial. After the hearing, Appellant was given copies of the grand jury tapes and the photographs. The Commonwealth claims that no written statements were obtained from the arresting officers or the Woodford County assistant Commonwealth's attorney.

Appellant apparently believes that the Commonwealth obtained the requested statements but refused to produce them because they are exculpatory. No evidence supports that conclusion. The final

pretrial discourse between the prosecutor and defense counsel indicates that no statements were obtained from these witnesses. The Commonwealth is under no obligation to obtain statements for a defendant, nor can it produce nonexistent statements.

## VIII. MISCELLANEOUS ISSUES.

Finally, Appellant raises three issues that are either unpreserved, meritless, or both:

■■■ 1. That he was denied the right to a preliminary hearing in Fayette District Court under RCr 3.07. A defendant has no right to a preliminary hearing. *King v. Venters*, Ky., 595 S.W.2d 714 (1980). The Fayette District Court case jacket indicates Appellant, by counsel, waived the preliminary hearing.

■■■ 2. That he was denied effective assistance of appellate counsel. Ineffective assistance of appellate counsel is not a cognizable issue in this jurisdiction. *Hicks v. Commonwealth*, Ky., 825 S.W.2d 280 (1992).

3. That a giant conspiracy stretching from the Lexington Metro Police Department to the Supreme Court of Kentucky has colluded to keep Appellant unconstitutionally confined. No evidence supports this aberration.

Accordingly, the judgments of conviction and sentences imposed by the Fayette Circuit Court are affirmed.

All concur.