# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED:  DECEMBER 19, 2024
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0398-MR

WILLIAM B. JACKSON                                            APPELLANT

V.
ON APPEAL FROM FRANKLIN CIRCUIT COURT
HONORABLE THOMAS D. WINGATE, JUDGE
NO. 22-CR-00092

COMMONWEALTH OF KENTUCKY                                       APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

A Franklin County jury convicted William B. Jackson[1] of first-degree rape, victim under 12 years of age, and first-degree sodomy, victim under 12 years of age.  He received a total sentence of thirty years' imprisonment and appeals to this Court as a matter of right.[2]  Williams argues the trial court erred by:  (1) denying his motion for a continuance; (2) denying his motion for directed verdict; and (3) admitting irrelevant evidence.  Having carefully reviewed the briefs, law, and record, we affirm.

---

[1] For clarity, we will refer to Jackson by his first name.

[2] KY. CONST. § 110(2)(b).

## FACTS AND PROCEDURAL HISTORY

William and his wife, Kayla Jackson, became foster parents to seven-year-old D.J.[3] and her younger brother in February 2020. D.J. initially displayed behavioral problems that were attributed to her difficult upbringing. However, once D.J.'s visits with her biological mother ended, her relationship with the Jacksons improved.

In March 2021, Kayla left the house to go out with friends for the evening. D.J. was nervous and Kayla gave her permission to sleep in the Jacksons' bed. D.J. went to sleep wearing shorts and underwear underneath a long nightgown.

At some point during the night, D.J. awoke and noticed William beside her in the bed. He was wearing shorts and nothing else. William turned D.J. onto her back, pulled down her shorts and underwear, and began licking her vagina. He also asked her if he could place his penis in her mouth. D.J. told him no and then he continued to lie beside her.

Initially, D.J. told a friend about what William had done. However, she made the friend promise not to tell anyone because she was afraid of being taken away from the Jacksons. On March 21, 2022, D.J. confided in another friend at school. Both of D.J.'s friends informed a teacher who notified the school counselor in turn. After speaking with D.J., the counselor contacted law enforcement and social services.

---

[3] We use initials to protect the minor victim's privacy. *See* Kentucky Rules of Appellate Procedure (RAP) 31(B).

When questioned by Detective Gus Curtis of the Frankfort Police Department, William initially denied the allegations. His story soon changed, however, and he claimed to have woken up with his finger placed between the lips of D.J.'s vagina. William stated D.J. told him to leave his finger there or she would tell on him. He also denied licking D.J.'s vagina but admitted to kissing her just above it while she kept telling him to go lower. William claimed he was afraid D.J. would blackmail him if he did not do as she asked. He purportedly drew the line, however, when D.J. asked him to place his penis in her mouth. William observed that D.J. seemed "horny" during the encounter and admitted he was in the process of becoming sexually aroused as well.

As the interview continued, William ultimately claimed he was in a no-win situation, so he did everything D.J. wanted and he thought she had enjoyed it. He also stated his wife would probably be disgusted by the entire incident especially his licking of D.J.'s vagina. William further admitted to inserting his middle finger into D.J.'s vagina while she was asleep.

William was indicted on charges of first-degree rape, first-degree sodomy, and incest. Prior to trial, the incest charge was dismissed without prejudice. The jury found him guilty of the remaining charges. The trial court sentenced William to a total of thirty years' imprisonment in accordance with the jury's recommendation. This appeal followed.

## LAW AND ANALYSIS

### 1. Trial court properly denied a continuance.

William first argues the trial court erred by denying his motion for a continuance. We disagree.

On January 4, 2023, the trial court entered an order scheduling the jury trial for May 22, 2023. William filed a motion for speedy trial on January 25, 2023. At a pre-trial conference on April 26, 2023, William informed the trial court that one of his witnesses, Kaylen Robinson, was experiencing medical issues which could prevent her from appearing at trial. The trial court instructed William to file a motion for continuance once he was sure Robinson would not be able to attend the trial. On May 1, 2023, the Commonwealth filed a motion for speedy trial on behalf of the child victim.[4] William responded in opposition and filed a motion for continuance, which the trial court denied on May 10, 2023.

RCr[5] 9.04 governs the postponement of trial in a criminal case and states in pertinent part:

> The court, upon motion and sufficient cause shown by either party, may grant a postponement of the hearing or trial. A motion by the defendant for a postponement on account of the absence of evidence may be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it.

---

[4] KRS 421.510 authorizes the Commonwealth to file a motion for speedy trial "[w]here the victim is less than sixteen (16) years old and the crime is a sexual offense[.]"

[5] Kentucky Rules of Criminal Procedure.

Evidence is deemed to be material if it could reasonably affect the outcome of the trial. *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky. 1983). Cumulative or inadmissible evidence generally does not rise to the level of materiality. *Id.*

After the issues of materiality and due diligence have been established, the trial court should consider the following additional factors in deciding whether to grant a continuance:

> [L]ength of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice.

*Morgan v. Commonwealth*, 421 S.W.3d 388, 392 (Ky. 2014) (quoting *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991)). The denial of a motion for continuance is generally reviewed for abuse of discretion. *Id.* "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Robinson is a former co-worker of Kayla and friend to the Jackson family. In the affidavit accompanying his motion for continuance, William asserted she would testify:

- D.J.'s demeanor changed shortly after coming to the Jackson residence.

- Kayla asked her for assistance dealing with D.J.'s aggressive and violent behavior.

5

- Kayla asked William for additional help managing D.J.'s behavior.

- Kayla did not feel comfortable being alone with D.J.

- D.J. was known to lie, had previously accused an uncle of molesting her, and had lived in four previous foster homes.

- D.J. would fabricate stories about her foster families to be moved.

- She and her husband were present at the Jackson residence until 11:30 P.M. on the date the alleged criminal conduct occurred.

- She did not observe any changes between William and D.J. after the alleged incident and they appeared to have a normal father-daughter relationship.

We agree with the Commonwealth that Robinson's proposed testimony was merely cumulative or otherwise inadmissible. Kayla testified and was subject to cross-examination regarding changes in D.J.'s demeanor and other behavioral problems. She stated that William helped her to improve the situation. We further fail to discern how Kayla's personal comfort level with D.J. makes it any more or less likely that William raped and sodomized his foster daughter. KRE[6] 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

---

[6] Kentucky Rules of Evidence.

D.J. also testified and was subject to cross-examination. Under KRE 608(b), specific instances of a witness's conduct pertaining to truthfulness or untruthfulness may only be "inquired into on cross-examination of the witness" and "may not be proved by extrinsic evidence." Thus, Robinson would not have been permitted to testify regarding D.J.'s alleged fabrication of stories about her foster families. Moreover, the jury heard Kayla's testimony and William's recorded statement that D.J. was known to lie occasionally.

Additionally, the proposed evidence that D.J. had previously accused an uncle of sexual abuse was inadmissible under the trial court's pre-trial order excluding "any argument, testimony, or evidence alleging that the victim has made prior allegations of sexual abuse against prior foster homes or was the victim of past sexual abuse." The validity of that order has not been challenged in this appeal.

Further, we cannot conclude Robinson's presence at the Jackson residence prior to the time everyone went to bed has any relevance to the ultimate issue of William's guilt. KRE 401. Similarly, Robinson's opinion concerning the import of D.J.'s demeanor and relationship to William following the incident is also irrelevant. Because William failed to demonstrate the materiality of Robinson's proposed testimony, we cannot conclude the trial court abused its discretion by denying his motion for a continuance.

## 2. William's extrajudicial confession was sufficiently corroborated.

For his second contention of error, William argues he was entitled to a directed verdict on the charge of first-degree rape. Specifically, he contends the

7

Commonwealth failed to sufficiently corroborate his extrajudicial confession to placing his fingers in D.J.'s vagina. We disagree.

At the outset, we agree with the Commonwealth that this issue is not properly preserved for appellate review. To properly preserve a sufficiency-of-the-evidence claim in a criminal case, the defendant is required to:

> (1) move for a directed verdict at the close of the Commonwealth's evidence; (2) renew the same directed verdict motion at the close of all the evidence, unless the defendant does not present any evidence; and identify the particular charge the Commonwealth failed to prove, and *must identify the particular elements* of that charge the Commonwealth failed to prove.

*Ray v. Commonwealth*, 611 S.W.3d 250, 266 (Ky. 2020) (emphasis added). In his motion for directed verdict, William failed to identify the particular elements which the Commonwealth failed to prove. Thus, the alleged error is unpreserved. However, William has alternatively requested palpable error review under RCr 10.26 which states:

> A palpable error which affects the substantial rights of a party may be considered by the court on motion for a new trial or by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that manifest injustice has resulted from the error.

A palpable error is "easily perceptible, plain, obvious and readily noticeable." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006). To demonstrate manifest injustice, a party must show the "probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006) (quoting *Burns v. Level*, 957 S.W.2d 218, 222 (Ky. 1997)). In other

8

words, a palpable error occurs where "the defect in the proceeding was shocking or jurisprudentially intolerable." *Id.* at 4.

The failure to grant a directed verdict based on the insufficiency of evidence amounts to palpable error because "it is clear that a different result would occur, since a defendant convicted on insufficient proof should be acquitted." *Commonwealth v. Goss*, 428 S.W.3d 619, 627 (Ky. 2014). Thus, a conviction based on insufficient evidence necessarily results in manifest injustice. *Id.*

RCr 9.60 requires the corroboration of extrajudicial confessions and provides, "[a] confession of a defendant, unless made in open court, will not warrant a conviction unless accompanied by other proof that such an offense was committed." The purpose of this rule is to prevent a criminal defendant from being convicted for a crime that did not actually occur. *Smith v. United States*, 348 U.S. 147, 153 (1954).

The requirement of corroborative evidence thus "addresses itself as to whether the *crime* charged was committed and *not as to whether* the particular defendant committed it." *Slaughter v. Commonwealth*, 744 S.W.2d 407, 410 (Ky. 1987). The term "corpus delicti" refers to the fact that a criminal offense was committed and is defined as "the body of the offense, the substance of the crime." *Warmke v. Commonwealth*, 297 Ky. 649, 180 S.W.2d 872, 873 (1944). In *Dolan v. Commonwealth*, 468 S.W.2d 277, 282 (Ky. 1970), our predecessor Court formulated the proper RCr 9.60 analysis in relation to proof of the corpus delicti:

9

> Once the corpus delicti has been established a defendant's guilt can be established entirely by his own confession. Phrased in another way it may be said that the first requirement of the Commonwealth in a criminal prosecution is to establish that a crime has been committed. This cannot be established solely by an out-of-court confession. Once it has been sufficiently shown that a crime was committed the question of who committed it may be established solely upon the basis of an out-of-court confession.

(Internal citation omitted).

Kentucky precedent has long held "slight corroboration may suffice" to establish the corpus delicti. *Laughlin v. Commonwealth*, 18 Ky.L.Rptr. 640, 37 S.W. 590, 592 (1896). In more recent decisions, we have further explained, "the corroborative evidence need not be such that, independent of the confession, would prove the corpus delicti beyond a reasonable doubt; and proof of the corpus delicti may be established by considering the confession as well as the corroborating evidence." *Lofthouse v. Commonwealth*, 13 S.W.3d 236, 242 (Ky. 2000).

In *W.D.B. v. Commonwealth*, 246 S.W.3d 448 (Ky. 2007), we considered the quantum of proof necessary to corroborate a confession to a sexual offense. A 12-year-old juvenile defendant was charged with a single count of first-degree sexual abuse for touching the penis of a three-year-old boy. *Id.* at 450. The defendant admitted to touching the victim's penis after taking him behind a shed and telling him to pull his shorts down. *Id.*

On appeal, the defendant argued that the Commonwealth failed to corroborate his confession. *Id.* at 455. We disagreed and noted the victim's father "testified that he walked around the shed and found his son with his

pants down in [the defendant's] company and observed that [the defendant] had an erection." *Id.* at 456. Under these circumstances, we held "[t]he Commonwealth's proof corroborated the circumstances of the crime to which [the defendant] confessed: the time, the persons present, the place, the three-year-old victim with his swim trunks down and penis exposed, and [the defendant] with an erection." *Id.*

Thus, sufficient corroborative evidence need not satisfy the elements of the charged offense. *Id.* In other words, the corpus delicti rule should not be interpreted so strictly "that independent evidence of every physical act constituting an element of an offense is necessary." *People v. Jones*, 949 P.2d 890, 904 (Cal. 1998). Moreover, "circumstantial evidence of multiple forcible sexual acts sufficiently establishes the requisite prima facie showing" of corpus delicti. *Id.* at 903.

In *W.D.B.*, we specifically recognized that sexual offenses do not "always result in physical evidence—such as the corpse of a murdered person—that the crime occurred." 246 S.W.3d at 456; *see also Laughlin*, 37 S.W. at 592 ("In many cases it would be utterly impossible to bring guilty persons to justice if it required positive evidence of the corpus delicti."). Thus, such indirect corroboration of the corpus delicti is often indispensable to the administration of justice in cases where a vulnerable victim's direct testimony is unavailable, and evidence of visible injuries or other tangible proof is lacking.

In the present appeal, the Commonwealth clearly demonstrated that a sexual offense occurred through D.J.'s testimony without reference to William's

11

confession. Additionally, both charged offenses involved the same victim and were otherwise closely related in terms of the sexual nature of the offenses as well as the time and place of their commission. Under these circumstances, we are convinced "the circumstantial evidence and the confession considered together . . . constitute[d] sufficient proof to take the case to the jury[.]" *W.D.B.*, 246 S.W.3d at 456.

### 3. Admission of irrelevant evidence did not amount to palpable error.

Finally, William argues the trial court erred by allowing the Commonwealth to engender sympathy for a witness through the admission of irrelevant evidence. Specifically, he contends the sympathy garnered from Detective Curtis's testimony regarding the death of a fellow officer would cause the jury to overlook his use of deceptive interrogation techniques and give additional weight to his testimony. William concedes this alleged error is unpreserved and requests palpable error review.

After Detective Curtis recounted his employment history and experience as a police officer, the following exchange occurred:

> **Com.**: I am going to ask you a personal question. In the course of those six years, did you get to know many fellow officers there in Georgetown?
>
> **Det. Curtis**: I did.
>
> **Com.**: Just to make the jury aware . . . do you sit here testifying with a heavy heart today?
>
> **Det. Curtis**: Yes sir.
>
> **Com.**: I think it is important for the jury to know as to your testimony here today. Did you lose somebody very close to you yesterday?

12

**Det. Curtis**:  Yes sir.

**Com.**:  And was he a law enforcement officer in Georgetown?

**Det. Curtis**:  Yes sir.

**Com.**:  And were you here at the Courthouse going over everything with me last night until late?

**Det. Curtis**:  Yes.

**Com.**:  Were you here until late last night?

**Det. Curtis**:  No, I was at UK Hospital.

The questioning then returned to the subject of Detective Curtis's training and qualifications.

Our precedents clearly prohibit the admission of evidence which is calculated to elicit "an emotional response that inflames passions, generates sympathy, or arouses hostility." *Stieritz v. Commonwealth*, 671 S.W.3d 353, 374 (Ky. 2023) (quoting *Dixon v. Commonwealth*, 149 S.W.3d 426, 431 (Ky. 2004)).  In *St. Clair v. Commonwealth*, 140 S.W.3d 510, 544 (Ky. 2004), we specifically held a witness's testimony that she appeared nervous and upset because her mother had recently suffered a stroke was properly excluded on the ground it would have impermissibly engendered sympathy from the jury.

We have little difficulty concluding the Commonwealth's inquiry into Detective Curtis's unfortunate personal loss was inappropriate.  However, William has not cited, and we have not discovered, any authority equating personal sympathy for a police officer with his or her credibility relative to the use of lawful interrogation techniques.

13

This Court has clearly held that a police officer may testify to provide context to a defendant's recorded statement including an explanation of any lawful interrogation techniques. *Walker v. Commonwealth*, 349 S.W.3d 307, 312 (Ky. 2017). While we have also recognized the potential "that the jury will misunderstand and accord to those comments an impermissible weight during deliberation[,]" the proper remedy "to any possible adverse inference by the jury is a limiting admonition given by the court before the playing of the recording." *Lanham v. Commonwealth*, 171 S.W.3d 14, 27-28 (Ky. 2005). However, the failure to request an admonition amounts to a waiver, which we will not review. *Id.* at 28.

William did not request an admonition concerning any statements made by Detective Curtis during the playing of the recorded interview. Moreover, Detective Curtis thoroughly explained his use of various interrogation techniques. William's extrajudicial confession to both charged offenses was sufficiently corroborated by D.J.'s direct testimony. We are confident a jury can differentiate between personal sympathy and "and the context-setting questions and comments of the detective who is trying to elicit the suspect's statement[.]" *See Walker*, 349 S.W.3d at 313. Therefore, we cannot conclude the improper admission of testimony relating to Detective Curtis's personal loss would have changed the outcome of this case or otherwise resulted in manifest injustice. *Martin*, 207 S.W.3d at 3. Reversal is unwarranted.

## CONCLUSION

For the foregoing reasons, the judgment of the Franklin Circuit Court is hereby affirmed.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Roy A. Durham, II
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Russell M. Coleman
Attorney General of Kentucky

Stephanie L. McKeehan
Assistant Attorney General