**William Henry LUCKETT, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Supreme Court of Kentucky.

April 1, 1977.

Rehearing Denied June 10, 1977.

Jack E. Farley, Public Defender, Kevin M. McNally, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., William W. Pollard, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

The appellant, William Henry Luckett, was found guilty of first degree robbery and sentenced to serve 20 years in the penitentiary. On this appeal he claims three errors and, as taken from his brief, are as follows:

"1. Did the trial court commit reversible error and deny the appellant due process of law when it denied the appellant's motion to suppress the unnecessarily suggestive pretrial photo-identification procedure and the resulting tainted in-court identification?

2. Did the trial court commit reversible error and deny the appellant's constitutional right to a fair trial by permitting the Commonwealth's Attorney to testify as a prosecution witness and thereafter continue to participate in the trial?

3. Did the trial court commit reversible error and deny the appellant's con-

stitutional right to a fair trial by permitting the Commonwealth to engage in improper conduct during trial and closing argument?"

On February 2, 1976, the appellant made a motion to suppress all of the evidence relating to his identification. A hearing was held on February 4, 1976, after which the motion to suppress was denied. The following day appellant was tried and found guilty as charged.

The evidence discloses that at about 9:15 a. m. on October 24, 1975, a person, later identified as appellant, entered the Fitzgerald Warehouse under the pretext of being a potential customer and waiting for his wife or girlfriend to come so that together they could pick out some furniture. He stayed and looked about the store for about forty-five minutes. During this time the store manager, Gilbert Barron, and appellant were in conversation and appellant gave his name as Luckett. Appellant left the store and was away for about an hour. Upon returning, he again pretended to be waiting for his wife or girlfriend. After a short period of time appellant struck Barron on the head with an iron pipe, took his wallet containing $140, and ordered him into a nearby bathroom, with directions to lie on the floor. As the robber departed he told Barron that he was going to take a stereo and warned him against reporting it to the police. After several minutes had passed, Barron came out of the bathroom and the man and stereo were gone. Barron washed off the blood and changed his bloody shirt, then went to the hospital, where he reported the assault and robbery to Detective Sergeant Robert A. Meadows. The assailant was described as being about 22 years of age, 6 feet 1 inch or 6 feet 2 inches tall, weighing between 190 or 205 pounds, having fairly long hair, wearing a turtleneck sweater and raincoat, and using the name of Luckett. At the police station that afternoon Barron made a tentative identification of appellant from four mug shots. Seven days later, at the store, Barron again was shown the same four pictures and at this time he reaffirmed his former identification. Although Barron had formerly equivocated as to the identity, on this latter viewing of the pictures he made a positive identification of the appellant as being the person who had assaulted and robbed him.

A witness by the name of Clarence Calhoun, who had spoken to appellant while he was in the store on October 24, 1975, and of course prior to the robbery, identified appellant from a group of three pictures as the person that he saw in the store on that day. The evidence of appellant having a stereo was furnished by Conchita Posey, appellant's girlfriend. She testified that when she returned home from work, at about 2:30 p. m., appellant and her brother were there. When she queried them about the stereo, appellant first said that he bought it in Evansville, but later said he bought it from two men whom he identified as Keebie Smith and Tyronne Green. This concluded the case for the Commonwealth in chief. Appellant's motion for a directed verdict was properly denied.

The appellant testified in his own behalf. His defense was an alibi, claiming to be at the home of Faye Floyd the entire morning. He stated that he met Smith and Green on two occasions that afternoon and that he bought the stereo from them. Both Smith and Green were called as witnesses by the Commonwealth, each of whom denied stealing, selling, or trying to steal the stereo. Appellant claimed to be regularly employed by the Corbell Construction Company, but stated that when he reported for work on the morning of October 24, 1975, he was told that there was no work that day. By way of rebuttal, the treasurer of the construction company testified that he had checked the company records for the last half of 1975 and could not find any record of appellant having worked for them during that time.

During the time appellant was in jail awaiting trial he sent word that he would like to talk with the Commonwealth's Attorney. Thereupon, the Commonwealth's Attorney went to the jail where he and appellant engaged in a conversation, the

context of which varies between the two. Appellant contends that all he said was to repeat his contention of innocence. The version of the Commonwealth's Attorney was that appellant, after affirming his innocence, said that (1) he, Conchita and Karen Hatchett, during the afternoon of the day in question, were standing on a street corner when Smith and Green drove by with the stereo in their pickup truck; (2) Green and Smith said they got the stereo from an old man they hit on the head; and (3) he did not buy the stereo. Earlier in his testimony appellant stated that he had purchased the stereo and Conchita, the woman with whom he lived, testified that he told her he bought it from two men. After the in-jail conference with appellant, the Commonwealth's Attorney forthwith relayed the information to Detective Meadows for further investigation. In doing so, Detective Meadows talked with Conchita at her home and while there recovered the stereo.

Officer James Gass testified that he took a fingerprint from a glass-top piece of furniture at the Fitzgerald Warehouse and identified it as appellant's. Albert Holbert, a public defense investigator, would not make a positive identification from the print.

In support of appellant's first issue, challenge is directed to the first and second photographic displays. It is argued that the photographs reflect appellant larger than the other persons and as being the only one bearing a resemblance to appellant and the only one wearing a turtleneck sweater. Appellant further complains that too few photographs (4) were used in the comparison; that the photographs (mug shots) had criminal information written on the back sides; that the Commonwealth failed to secure a positive identification the first time; and that the same pictures were used in the second display for identification purposes.

■ First of all, the height and weight of the persons whose pictures were used were written on the back of the photographs and were not seen by the person making the identification. Second, the height and weight of the persons whose pictures were displayed were not suggestive because they showed the persons from the waist up only and the shoulders were cropped off. Third, concerning appellant's complaint that his picture which was used showing him wearing a turtleneck sweater was suggestive, counsel answers his own argument when he hammers home the proposition that Barron was unable to make an identification from the mug shots. If, as appellant contends, Barron was unable to make a positive identification from the mug shots, the pictures could not have been very suggestive. Lastly, it is argued that too few pictures were displayed. This court is called on by counsel to clearly define constitutionally acceptable procedures for photographic identification. This, we have already done. In *Myers v. Commonwealth*, Ky., 499 S.W.2d 277 (1973), this court said:

> " * * * If Strange's in-court identification was based upon his independent recollection of appellant on the occasion of the crime, his testimony was not necessarily made inadmissible because of the improper jail confrontation. See Sobel, Eye-Witness Identification in Criminal Cases (1966), § 7, page 18. The trial court conducted a hearing and the record is before us. Many circumstances, including the opportunity of observation at the crime, should be considered. In the instant case Strange saw appellant face to face. Under the highly intense experience it was possible that Strange would receive impressions of appellant's appearance that would be more definite and longer lasting than a casual meeting of him on the street."

On appellant's motion to suppress, the trial judge held an in-chambers hearing. The testimony was transcribed and is filed in the record. The trial judge denied the motion and the record clearly supports his action. Barron's identification came about by reason of the more than an hour that appellant was in the store in view of and in conversation with Mr. Barron.

The attacks made by counsel for appellant on the conduct of the Commonwealth's

Attorney and the Assistant Commonwealth's Attorney are not well taken. The objectionable conduct and statements, as taken from appellant's brief, are:

"1. The Commonwealth's Attorney testified that in his personal opinion the appellant was guilty;

2. The Assistant Commonwealth's Attorney repeatedly called the appellant and his alibi witness *liars;*

3. The Assistant Commonwealth's Attorney used emotional appeals in his closing argument which were calculated to inflame the passions of the jury;

4. The Assistant Commonwealth's Attorney repeatedly called the appellant a 'dangerous criminal' and stated that he was attempting to 'intimidate' the witnesses and prosecutors;

5. The Commonwealth's Attorney acted improperly in testifying against the appellant in the manner in which he did and in actively participating in the case thereafter."

█ The record discloses that no objection was made when the Commonwealth's Attorney expressed his opinion of appellant's guilt and no objection was made to the Assistant Commonwealth's Attorney referring to appellant and his alibi witness as liars. No where is there reflected any objection to any conduct of the Assistant Commonwealth's Attorney or to any statements made by him in his closing argument that would inflame the passions of the jury. No objection was made to the Assistant Commonwealth's Attorney referring to appellant as a dangerous criminal. No objection was made to the manner in which the Commonwealth's Attorney testified or to his participation in the trial after he testified. The attorney for appellant did object when the Commonwealth's Attorney first took the stand; however, this objection was predicated on a charge that the Commonwealth had failed to lay a proper foundation to justify this action on the part of the Commonwealth's Attorney. *Jett v. Commonwealth,* Ky., 436 S.W.2d 788 (1969). Not only did counsel for appellant fail to

timely object, but in no circumstance was there a request made of the trial judge that he instruct the jury relative to the competency of the challenged conduct. Appellant's failure to properly object constituted a waiver of his right to later complain. RCr 9.54(2); *Ohio River Sand Company v. Commonwealth,* Ky., 467 S.W.2d 347 (1971); *Bush v. Commonwealth,* Ky., 457 S.W.2d 495 (1970).

The judgment is affirmed.

All concur.