Travis SMITH, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2011–SC–000154–MR.

Supreme Court of Kentucky.

June 21, 2012.

Roy Alyette Durham II, Assistant Public Advocate, Department of Public Advo-

cacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General, Micah Brandon Roberts, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Travis Smith, appeals as a matter of right, Ky. Const. § 110, from a judgment of the Hickman Circuit Court convicting him of first-degree burglary by complicity, first-degree robbery by complicity, and second-degree assault by complicity, and sentencing him to a total of twenty-two years' imprisonment.[1] Appellant raises the following claims of error: (1) that the trial court erroneously instructed the jury by failing to reflect the proper intent requirement in the complicity sections of the instructions; and (2) that the trial court erred by imposing court costs against him even though he is indigent.

For the reasons stated below, we conclude that Appellant's claims of instructional error are not properly preserved. Nevertheless, upon palpable error review, we conclude that the jury was adequately instructed upon the necessary elements of accomplice culpability, and therefore do not amount to palpable error. We also conclude that the trial court erred by imposing court costs against Appellant under KRS 23A.205(2) without determining if he was "poor person," as that term is defined in KRS 453.190(2). We therefore affirm the judgment of conviction but remand for further proceedings on the question of the imposition of court costs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Evidence presented by the Commonwealth at trial demonstrated that Appellant was eighteen years old at the time of the crimes, and was a member of a gang called the "Gangster Disciples." He lived near the victim, 74 year-old Thomas Dublin. He had worked for the victim over a long period of time and had been to the victim's residence on many occasions over the course of several years. As such, Dublin was well acquainted with Appellant.

On the day of the crimes, Dublin went, as he frequently did, to the nearby Jewell Mart to eat lunch and socialize with others that congregated there. As he counted out his money to pay for his lunch, a $100–bill was briefly visible to by-standers which included Terrell Thomas. At home that evening, Dublin heard a knock on his door that he assumed was his son. When he opened the door, however, a man with a cloth over his face entered the residence. Dublin was not fooled by the ineffective disguise. He immediately recognized Appellant and asked him what he was doing there. Appellant looked around the residence and then promptly left without saying anything.

When Dublin tried to close the door behind Appellant, another man (apparently accomplice Billy Joe Crumble) used his foot to prevent the door from closing. The man then shoved the door back open, causing Dublin to lose his balance and fall over a table. As Dublin fell, his leg hit a chair

---

1. The judgment entered herein (as well as the jury instructions at issue) refer to Appellant's crimes as "Complicity to Burglary 1st", "Complicity to Robbery 1st", and "Complicity to Assault 2nd." For clarity, we note that under our penal code "complicity" is not a separate crime; rather, it is a means by which a crime may be committed. Therefore, a more accurate name for the crime of an accomplice may be "First-degree Robbery by Complicity", etc.

and his head hit the floor, causing a cut. As the intruder stood watch at the door, two more men wearing caps and bandanas over their faces (apparently Terrell Thomas and Kendrick Hunt) entered the residence. They searched for, but were unable to find, Dublin's money. One of the men (apparently Hunt) approached Dublin with a knife and threatened to cut his throat. Dublin grabbed defensively at the knife and cut his finger.

Another intruder, apparently Thomas, pointed a gun at Dublin's head and demanded to know where Dublin kept his money. Dublin surrendered his money to the intruders, who also took a few items of Dublin's personal property. It appears that after his initial confrontation with Dublin, Appellant remained outside while the events described above were occurring. Based upon Dublin's recognition, police began investigating Appellant's involvement in the crimes. Eventually, Appellant confessed to his involvement and he identified his accomplices.

Appellant was indicted and charged as an accomplice (KRS 502.020) to first-degree burglary (KRS 511.020), to first-degree robbery (KRS 515.020), and to second-degree assault (KRS 508.020).[2] He presented a defense that he did not know in advance of the burglary that his associates would use force or weapons against Dublin. He also claimed that he never entered the residence. Other evidence strongly suggested, however, that he was the first intruder into the residence, and that he knew that Thomas was armed with a gun and that Hunt was armed with a knife.

The jury found Appellant guilty and recommended a sentence of imprisonment for ten years on the first-degree burglary conviction, for twelve years on the first-degree robbery conviction, and for five years on the second-degree assault conviction, with all sentences to be served concurrently for a total of twelve years. The trial court, citing Appellant's long association with the victim and his exploitation of this knowledge to facilitate the crimes, elected to run the twelve-year sentence and the ten-year sentence consecutively, but ordered both to run concurrently with the five-year sentence, for a total sentence of twenty-two years. The trial court also imposed court costs of $155.00 and restitution of $781.20.[3] This appeal followed.

## II. JURY INSTRUCTIONS

The Commonwealth's case against Appellant was based entirely upon theories of accomplice liability. In his first assignment of error, Appellant argues that the instructions did not properly apprise the jury of the specific intent or knowledge required for culpability as an accomplice to each of the charged offenses and, therefore, the instructions permitted the jury to convict Appellant without the requisite finding of the appropriate *mens rea*. At the outset, the Commonwealth contends that Appellant did not adequately preserve his claim of instructional error for appellate review. Therefore, we begin our analysis by examining whether the issues raised by Appellant were properly preserved.

### 1. *Preservation of Instructional Error*

■ The Commonwealth challenges the preservation of Appellant's claim because Appellant never objected to the trial

---

**2.** He was also charged with one count of criminal syndicate (KRS 506.120). He was acquitted of that charge and, therefore, it is not relevant to this appeal.

**3.** Appellant does not challenge the judgment specifically with respect to restitution.

court's proposed instructions. Appellant argues, however, that even without an objection, the issue was indeed preserved because on the day of trial, he tendered to the trial court a set of instructions that correctly set forth the *mens rea* required for accomplice liability. His proposed instructions were thirty-five pages in length, including penalty phase and verdict forms, and were submitted under a cover page that carried this disclaimer: "The defendant expressly reserves the right to alter, amend or withdraw the proposed Instructions at any time prior to or during the trial of this matter."

Appellant's tendered instructions also included instructions for the lesser-included offenses of second-degree burglary by complicity, second-degree robbery by complicity, as well as other instructions favorable to the defense. On the point of error he now raises, the difference between his tendered instructions and those given by the trial court amounts to a relatively subtle distinction buried within the thirty-five pages he tendered to the trial court on the day of trial. During the instruction conference, as the jury instructions were being finalized, Appellant's counsel never directed the trial judge's attention to the variance between his tendered instructions and the instructions being prepared by the trial court.

RCr 9.54(2) provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party's position has been *fairly and adequately* presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection." (emphasis added). Appellant could have easily avoided the error he now claims by giving fair and adequate notice of his concern to the trial court, if indeed trial counsel then shared the concerns now raised by appellate counsel. Silence as the trial court proceeded down what Appellant now claims to be an erroneous path would have been reasonably perceived as agreement with the trial court's instructions, and falls far short of the fair and adequate notice required by RCr 9.54. While a party generally may preserve instructional error by tendering to the trial court a correct formulation of the jury instruction, he may not at the same time sit idly by during the jury instruction conference and create the appearance of acquiescence to erroneous instructions. Moreover, we are reluctant to fault the trial court for failing to follow Appellant's tendered instructions when Appellant himself equivocated with the disclaimer reserving "the right to alter, amend or withdraw the proposed Instructions at any time prior to or during the trial of this matter."

The provisions of the tendered instructions which, according to Appellant, correctly set forth the requisite *mens rea* for accomplice culpability amounts to a relatively subtle distinction hidden within thirty-five pages of instructions, tendered the day of trial, and not mentioned to the trial court during the instruction conference. We are satisfied that under these circumstances Appellant did not fairly and adequately raise his objection to the instructions to the trial court. As such, we agree with the Commonwealth that this error is not properly preserved. *Chumbler v. Commonwealth*, 905 S.W.2d 488, 499 (Ky. 1995) (defendant did not adequately preserve for appellate review the issue of whether the complicity instruction presented to jury was improper where, although defendant tendered alternative instruction, she did not make specific objection to complicity instruction given by the trial court, and did not state specifically grounds on which she believed the court's instruction

was improper); *Luckett v. Commonwealth,* 550 S.W.2d 517, 520 (Ky.1977) ("Appellant's failure to properly object constituted a waiver of his right to later complain."); *Commonwealth v. Duke,* 750 S.W.2d 432, 433 (Ky.1988) ("It is the duty of counsel who wishes to claim error to ... object stating the specific basis for objection so that the trial judge will be advised on how to instruct.")

We therefore agree with the Commonwealth that this allegation of error is not properly preserved. Thus, our review will proceed under the manifest injustice standard contained in RCr 10.26.[4]

### 2. Analysis

KRS 502.020 describes two separate and distinct theories under which a person can be found guilty by complicity, i.e., "complicit in the act" under subsection (1) of the statute, which applies when the principal actor's *conduct* constitutes the criminal offense, and "complicit in the result" under subsection (2) of the statute, which applies when the *result* of the principal's conduct constitutes the criminal offense. The statute provides:

(1) A person is guilty of an offense committed by another person when, with the intention of promoting or facilitating the commission of the offense, he:

(a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or

(b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or

(c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

(2) When causing a particular result is an element of an offense, a person who acts with the kind of culpability with respect to the result that is sufficient for the commission of the offense is guilty of that offense when he:

(a) Solicits or engages in a conspiracy with another person to engage in the conduct causing such result; or

(b) Aids, counsels, or attempts to aid another person in planning, or engaging in the conduct causing such result; or

(c) Having a legal duty to prevent the conduct causing the result, fails · to make a proper effort to do so.

The primary distinction between these two statutory theories of accomplice liability is that, under KRS 502.020(1), a person can be complicit in the criminal act of another only if he/she intends that the principal actor commits that act. However, under KRS 502.020(2), a person can be complicit in the criminal result of another person's act without the intention of causing that result, so long as his state of mind equates to one of other "kind(s) of culpability with respect to the result that is sufficient for the commission of the offense," whether intentional, reckless, wanton, or aggravated wantonness (wanton under circumstances manifesting extreme indifference to human life). *Tharp v. Common-*

---

4. In deciding whether to exercise our discretion to grant palpable error review, we have noted the distinction made by the United States Supreme Court between a forfeited error, on the one hand, i.e., an error to which a party failed to make a timely objection, and, on the other hand, a waived error, i.e., an error of which the party was aware but to which he has knowingly decided not to object. *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). A waived error, we held, having been invited by the party, will not provide grounds for palpable error review under RCr 10.26. *Quisenberry v. Commonwealth,* 336 S.W.3d 19, 37 (Ky. 2011). Although the circumstances suggesting waiver are not as compelling in this case as they were in *Quisenberry,* they nevertheless give reason to consider the propriety of palpable error review.

*wealth,* 40 S.W.3d 356, 360 (Ky.2000); *quoting* KRS 502.020 (1974 Official Commentary); R. Lawson and W. Fortune, *Kentucky Criminal Law* § 3–3(b)(3), at 106, § 3–3(c)(2), at 114 (Lexis 1998).

Under the circumstances of this case, the complicity instructions for burglary and robbery clearly fall under KRS 502.020(1), requiring that Appellant, as an accomplice, intended the criminal acts to be committed; however, as further explained below, accomplice liability for the assault charge is better reviewed under KRS 502.020(2), requiring Appellant to have aided in the conduct that produced the result (e.g. serious physical injury.) *Tharp,* 40 S.W.3d at 360–361; *citing* KRS 502.020 (1974 Official Commentary) ("The most common examples of offenses having a prohibited result [and thus falling within KRS 502.020(2) ] are homicide, with the death of another as the prohibited result, and assault, with the bodily injury of another as the prohibited result."). Because of this distinction in the assault charge versus the burglary and robbery charges, we discuss the assault charge separately.

### a. Instructions for Accomplice Liability for Robbery and Burglary

■ Appellant argues that the robbery[5] and burglary[6] instructions were erroneous because they did not require the jury to separately find that *he* personally intended or knew that his accomplices (1) would be

armed with a deadly weapon (a gun and knife) during the robbery phase of the crimes; or (2) that his accomplices would be armed with a deadly weapon (a gun) during the burglary phase of the crimes. In other words, he argues that the instructions failed to require the jury to find that he had the required intent that his accomplices would engage in the aggravating conduct which elevated these crimes from a second-degree level to a first-degree level.

In *Skinner v. Commonwealth,* 864 S.W.2d 290 (Ky.1993), the defendant made substantially the same argument in a first-degree burglary by complicity case. There, the defendant argued that the trial court erred in instructing on first-degree burglary by complicity because there was no evidence that he knew that any participant in the crime was armed with a deadly weapon so as to elevate the felony classification of the crime. In rejecting this argument we held that "an accomplice may be held liable for a confederate's aggravated offense, although having no knowledge of the aggravating circumstance." *Id.* at 299. *See also Commonwealth v. Yeager,* 599 S.W.2d 458 (Ky.1980) (since the defendant who agreed to drive the getaway car and his accomplice both intended to commit robbery, defendant was properly convicted of first-degree robbery, rather than second-degree, even if he did not know or

---

**5.** KRS 515.020 defines first-degree robbery as follows: "A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he: (a) Causes physical injury to any person who is not a participant in the crime; or (b) Is armed with a deadly weapon; or (c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime."

**6.** KRS 511.020 defines first-degree burglary as follows: "A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime: (a) Is armed with explosives or a deadly weapon; or (b) Causes physical injury to any person who is not a participant in the crime; or (c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime."

approve of a gun being used), and *Ray v. Commonwealth*, 550 S.W.2d 482, 484 (Ky. 1977) (if a person "steals" either personally or through a confederate, he is guilty of theft, an intentional taking without permission, and thus the instruction that defendant or persons aiding and assisting him stole a sum of money ... did not have to be couched in terms of specific intention on part of the defendant as an aider and abettor in prosecution for first-degree robbery, and an alleged physical injury to an employee of the robbed liquor store did not have to be intended for defendant to be convicted of first-degree robbery since physical injury was not an element of the crime of robbery, but only an aggravating circumstance increasing the degree).

As later noted in *Young v. Commonwealth*, 50 S.W.3d 148, 162 (Ky.2001), *Skinner*, *Yeager*, and *Ray* "were cases in which an accomplice was found guilty by complicity of an offense that was enhanced to a higher degree because it was committed while the principal actor was armed with a deadly weapon or because the principal actor inflicted physical injury on the victim. Those cases simply hold that under KRS 502.020(1), the accomplice is guilty of the same offense as the principal." [7]

Clearly, the same rule applies in the situation we address. As such, the premise of Smith's central argument with respect to the robbery and burglary complicity instructions is simply incorrect. In summary, the instructions did not need to reflect that Appellant had the specific intent, or knowledge, that any of his accomplices would be armed with a deadly weapon during the commission of the robbery, or would be armed with a deadly weapon in the commission of the burglary.

### b. Instructions for Accomplice Liability for Second-degree Assault Instruction

Turning now to the second-degree assault instruction, Appellant contends that the instruction was erroneous because it did not require a finding that he intended for Duncan to be assaulted, or knew that his accomplices would do so while armed with a deadly weapon or dangerous instrument.

Complicity to assault (of any degree) is a "complicit in the result" crime because causing a particular result is an element of the offense. *See, e.g.*, KRS 502.020(2).[8] That is, all assault crimes include the element of causing the result of physical injury or serious physical injury to the victim. *See* KRS 508.010, *et. seq.* Thus to be found guilty of second-degree assault as relevant here, Appellant must have "[a]id[ed], counsel[ed], or attempt[ed] to aid another person in planning, or engaging in the conduct causing [the injuries to

7. Cooper succinctly states the rule in Kentucky as follows: "[*Ray* and *Yeager* are] important because they established the still unbroken precedent that complicity to first degree robbery requires only that the complicitor's culpability relate to the basic elements of robbery. He need not be complicit or even cognizant of, for example, the possession of a handgun by another actor. Possession of a deadly weapon, use of a dangerous instrument, and injury inflicted upon the victim are viewed as 'aggravators,' in which the complicitor need have no involvement at all." 1 Cooper, *Kentucky Instructions to Juries* § 10.09 Comment. The

same rule would, of course, apply in other complicity to the act crimes, including burglary.

8. KRS 508.020 provides that (1) A person is guilty of assault in the second degree when: (a) He intentionally causes serious physical injury to another person; or (b) He intentionally causes physical injury to another person by means of a deadly weapon or a dangerous instrument; or (c) He wantonly causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument.

the victim]." KRS 502.020(2)(b).[9] Further, as previously noted, a person can be guilty of being "complicit in the result" under KRS 502.020(2) without the specific intent that the principal's act cause the criminal result, that is, the defendant's guilt may be grounded in the mental states of wantonness or recklessness. *Tharp*, 40 S.W.3d at 360.

Upon review, we disagree with Appellant that the instructions were deficient in setting forth these elements. More specifically, the second-degree assault instruction, in combination with the instruction defining complicity, did in fact require that Appellant have aided in the conduct which resulted in the injuries incurred by Duncan.

The complicity to second-degree assault instruction stated as follows:

You will find the Defendant, Travis Smith, guilty of Complicity to Assault in the Second Degree under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

A. That in this county on or about the 10th day of March, 2010 and before the finding of the Indictment herein, the Defendant, Travis Smith, aided, counseled or attempted to aide (sic) others to cause physical injury to Thomas Dublin by means of a deadly weapon or dangerous instrument;

B. The knife was a dangerous instrument as defined under Instruction No. 4A;

AND

C. That in so doing:

(a) The Defendant, Travis Smith, or others intentionally caused physical injury to Thomas Dublin.

OR

(b) The Defendant, Travis Smith, or others wantonly caused serious physical injury to Thomas Dublin.

In addition, the trial court informed the jury of the definition of complicity consistent with KRS 502.020:

Complicity means that a person is guilty of an offense committed by another person when, *with the intention* of promoting or facilitating the commission of the offense, he solicits, commands, or engages in a conspiracy with such other person to commit the offense, or aids, counsels, or attempts to aid such person in planning or committing the offense. (emphasis added).

Clearly the better phrasing rather than "Travis Smith, or others used ..." would have been "Travis Smith, alone or in complicity with others used ..." *See Crawley v. Commonwealth*, 107 S.W.3d 197, 200 (Ky.2003); *see also* 1 Cooper, *Kentucky Instructions to Juries* (Criminal) § 10.09, § 10.12, § 10.13 (5th ed.2011). This phrasing would have both (1) tied this section of the instructions to the definition of "complicity," and (2) have avoided the use of an unmodified and universal "or others," which theoretically could include persons other than his confederates.[10][11]

---

9. The conduct underlying the assault charge was Hunt's brandishing of the knife against Duncan, during which Duncan grabbed at the knife and cut his finger.

10. We note that the same deficiency occurred in both the burglary and robbery instructions.

11. In this vein, it also would have been better to use the names of the accomplices rather than "or others." It is also worth noting that since there was no evidence presented that Appellant himself either used or threatened force, or was armed with a deadly weapon, the better instruction would also have omitted any reference to Appellant himself as having engaged in this conduct, and have been phrased in terms of one or more of his accomplices as having engaged in the conduct.

■ Save for the failure to use the phrasing as just explained, the instruction otherwise complies with the instruction approved in *Crawley*, 107 S.W.3d at 200 ("[the] element of intent is often satisfied by giving a separate instruction defining complicity."). Offsetting this, however, section "A" of the instructions substantially mirrors the definition of complicity, and thus effectively brings the instruction into compliance with *Crawley*. Moreover, by inference, the jury was directed to incorporate the definition of complicity into the main instruction. Consequently, while the instruction was in a sense a deviation from *Crawley*, it bears emphasis that jury instructions are reviewed "as a whole to determine whether they adequately inform the jury of relevant considerations and provide a basis in law for the jury to reach its decision." *Gibson v. City of Louisville*, 336 F.3d 511, 512 (6th Cir.2003); *quoting Vance v. Spencer County Public Sch. Dist.*, 231 F.3d 253, 263 (6th Cir.2000).

In viewing the second-degree assault instruction in its totality, when read in combination with the complicity definitional instruction, we believe the charge properly informed the jury of the elements necessary to convict Appellant of second-degree assault, including the relevant intent requirements. The instructions provided that Appellant could be convicted of the crime only if he either intended from the outset that there be an attack by one of his accomplices against Duncan with a knife which would cause physical injury, *see* KRS 508.020(1)(b), or absent this intent, that his mental state equated with wantonness in aiding in conduct which caused Duncan to incur serious physical injury. See KRS 508.020(1)(c). Accordingly, the instruction was in full accord with KRS 508.020 and the complicity statute, KRS 502.020.

The Commonwealth's theory was that Appellant's initial entry into Duncan's residence was to reconnoiter the scene, and so aided his accomplices in engaging in the conduct which caused the result, i.e., the injuries to the victim. The instructions reflect this, and further inquire concerning whether Appellant's criminal intent was intentional or wanton, and the degree of the injury. Insofar as the dangerous instrument requirement is concerned (the knife), and its use to aggravate the crime, as previously explained, "[U]se of a dangerous, instrument, and injury inflicted upon the victim are viewed as 'aggravators,' in which the complicitor need have no involvement at all." 1 Cooper, *Kentucky Instructions to Juries* § 10.09 Comment. As such, no palpable error occurred.

### 3. *Conclusion*

For the reasons discussed above, each of the complicity instructions captured the necessary elements to properly instruct the jury. And while there may have been minor discrepancies in the instructions, these deviations are not cited by Appellant as error. As such, no palpable error occurred as a result of the instructions. *See* RCr 10.26.

## III. ASSESSMENT OF COURT COSTS

■ Appellant also contends that the trial court erred by assessing $155.00 in court costs against him even though the trial court declared him to be indigent at the outset of the case by appointing counsel to represent him and did so again at the end of the case by granting his motion to appeal as a pauper. During the sentencing hearing the trial court asked Appellant if he had any money in his jail account and Smith responded "I think it's

---

Appellant, however, makes no claims of error related to these potential deviations.

like $1.00 and something." The court then responded:

Alright, there's been a recent Supreme Court ruling that says the court should not require indigent persons to pay their court costs. I understand the English of that ruling but this court, while we've got a system that is running out of money, feels like a person should pay his way if he has any ability to pay it. Based on testimony, you all are free to ask him any other questions that you want to. I understand it's a very small amount that he's got on his commissary account but if an individual's got some money on a commissary account or had money on a commissary account immediately prior to his sentencing, this court is going to find that he's no longer indigent in regard to his ability to pay his court costs and therefore he should pay his court costs. I'll put that right on the record and I'll sign this written Order if you want to appeal it and the Court of Appeals or Supreme Court can tell me that I'm wrong and I'll ... readdress it.

 Appellant concedes that this issue is not preserved, but requests palpable error review pursuant to RCr 10.26.[12] We

need not labor long over the issue of preservation, as the above transcription reveals, the trial judge himself raised the issue. It is a rule of long-standing that to secure appellate review of a ruling of the trial judge, the question must have been fairly brought to the trial court's attention. *Lanham v. Commonwealth,* 171 S.W.3d 14 (Ky.2005); *Jones v. Commonwealth,* 238 Ky. 453, 38 S.W.2d 251 (1931). Here however, the trial court raised the issue *sua sponte* by announcing that, despite controlling authority to the contrary, out of concern for the dismal affair of the state budget, he would assess court costs against Appellant.[13] When a trial judge notes on the record that his ruling is most likely erroneous and expressly invites appeal, a contemporaneous objection has no function and is purely superfluous. We will, therefore, accept this opportunity to clarify the law on this point, so that upon remand, the trial court will have the necessary guidance to make appropriate findings.

Appellant cites to *Ladriere v. Commonwealth,* 329 S.W.3d 278, 283 (Ky.2010), *Travis v. Commonwealth,* 327 S.W.3d 456, 459 (Ky.2010), and *Edmonson v. Common-*

---

**12.** Under the palpable error standard, an unpreserved error may be noticed on appeal only if the error is "palpable" and "affects the substantial rights of a party," and even then relief is appropriate only "upon a determination that manifest injustice has resulted from the error." RCr 10.26. In general, a palpable error "affects the substantial rights of a party" only if "it is more likely than ordinary error to have affected the judgment." *Ernst v. Commonwealth,* 160 S.W.3d 744, 762 (Ky. 2005). An unpreserved error that is both palpable and prejudicial still does not justify relief unless the reviewing court further determines that it has resulted in a manifest injustice, unless the error so seriously affected the fairness, integrity, or public reputation of the proceeding as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth,* 207 S.W.3d 1, 4 (Ky.2006). We have previ-

ously held that palpable error occurs when court costs are improperly assessed against an ineligible defendant. *Travis v. Commonwealth,* 327 S.W.3d 456 (Ky.2010).

**13.** The trial judge implies that he imposed court costs upon Appellant out of concern for the dire fiscal affairs of the state. It is hard to find any economic advantage in the judge's decision to assess court costs against a defendant who had only $1.00 to his name and would likely spend a substantial part of the next 22 years in prison, especially when the judge then invited Appellant to appeal the ruling and declared him to be indigent so that he could do so at taxpayer expense that will far exceed the court cost the judge sought to collect.

*wealth,* 725 S.W.2d 595, 596 (Ky.1987),[14] in support of his argument that Kentucky case law does not allow the imposition of court costs against on defendant found by the trial court to be indigent under KRS 31.110(1)(b).

For years this Court had taken the position that the language in KRS 31.110(1)(b), the statute providing for waiver of costs for *indigent* defendants, controlled over KRS 23A.205(2), which provides the trial court discretion in imposing court costs. *See,* e.g., *Edmonson, supra.* Accordingly, we have previously found the imposition of court costs upon an indigent defendant to be palpable error. *See,* e.g., *Wiley v. Commonwealth,* 348 S.W.3d 570, 574 (Ky. 2010). However, in *Maynes v. Commonwealth,* 361 S.W.3d 922 (Ky.2012) we abandoned this interpretation of the above mentioned statutes, and, accordingly, *Edmonson* and like cases are no longer controlling on this point.

■ The proper inquiry for assessing court costs is not whether a defendant is "indigent" as defined in KRS 31.110(1)(b), but whether, pursuant to KRS 23A.250(2), he is a "poor person" as defined in KRS 453.190(2).

The trial court assessed court costs upon his *sua sponte* determination that Appellant's jail account of $1.00 meant that he was "no longer an indigent person." While that ruling was obviously inconsis-

tent with the contemporaneous finding that Appellant's "indigent" status entitled him to an appeal at state expense, it was also not equivalent to a determination of whether Appellant was "a poor person." Accordingly, we reverse the assessment of court costs and remand that matter to the trial court for further proceedings consistent with *Maynes,* to determine, not whether a defendant is indigent as defined in KRS 31.110(1)(b), but whether he is a "poor person" as defined in KRS 453.190(2).

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Hickman Circuit Court is affirmed convicting Appellant for the crimes of first-degree burglary by complicity, first-degree robbery by complicity, and second-degree assault by complicity, are hereby affirmed. The portion of the judgment ordering Appellant to pay court costs is reversed and remanded to the trial court for further proceedings consistent with this opinion.

All sitting. All concur.

---

**14.** Abrogated by statute as explained in *Maynes v. Commonwealth,* 361 S.W.3d 922 (Ky.2012).